DOWNEY BRAND LLP
STEVEN H. GOLDBERG (Bar No. 140039)
OLIVIA M. WRIGHT (Bar No. 240200)
ASHLEY M. PORTER (Bar No. 285305)
621 Capitol Mall, 18th Floor
Sacramento, CA  95814-4731
Telephone: (916) 444-1000
Facsimile: (916) 444-2100
sgoldberg@downeybrand.com
owright@downeybrand.com
aporter@downeybrand.com

Attorneys for Plaintiff and Counterdefendant
BEL AIR MART, a California corporation

LAW OFFICES OF JOHN C. LASSNER
JOHN C. LASSNER (Bar No. 71604)
1501 28th Street
Sacramento, CA 95816
Telephone: (916) 733-3510
Facsimile: (916) 733-3512
john@jlassnerlaw.com

Attorney for Plaintiff and Counterdefendant
WONG FAMILY INVESTORS, L.P.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEL AIR MART,<br><br>            Plaintiffs,<br><br>     vs.<br><br>ARNOLD CLEANERS, INC., et al.,<br><br>            Defendants. | Case No.  2:10-CV-02392-MCE-EFB<br><br>**PLAINTIFFS' OBJECTIONS TO SUPPLEMENTAL EVIDENCE SUBMITTED BY CENTURY INDEMNITY COMPANY IN SUPPORT OF ITS REPLY TO ITS MOTION FOR DISMISSAL OF ACTION AS A SPOLIATION SANCTION, OR, IN THE ALTERNATIVE, FOR EVIDENTIARY SANCTIONS AND MONETARY SANCTIONS** |
| AND RELATED COUNTERCLAIMS | Date:     December 19, 2013<br>Time:     2:00 p.m.<br>Dept.:    Courtroom 7, 14th Floor<br>Judge:   Hon. Morrison C. England |

1

PLAINTIFFS' OBJECTIONS TO SUPPLEMENTAL EVIDENCE

Plaintiffs and Counterclaimants Bel Air Mart ("Bel Air") and Wong Family Investors, L.P., object to the supplemental witness declaration of Anne Gates ("Supplemental Gates Declaration") (Dkt. No. 229-8) filed by Century Indemnity Company ("Century"), insurer of Defendant and Counterclaimant The Estate of Ronald G. Armstrong, in support of its motion for sanctions for alleged spoliation of evidence. The Supplemental Gates Declaration does not comply with Rules 402, 403, 701 and 702 of the Federal Rules of Evidence ("FRE").

### I.     Plaintiffs Object to Century's Improper Expert Opinion Testimony.

The Supplemental Declaration of Anne Gates suffers from the same fatal flaws as Ms. Gates initial declaration. Therefore, it is improper and inadmissible for same the reasons Ms. Gates' initial declaration is inadmissible, set forth more fully in Bel Air Mart's Objections to Evidence Submitted by Century filed on November 21, 2013, Docket No. 221-1.

Century cannot satisfy its burden of proof by presenting inadmissible and patently flawed expert opinion testimony. (FRE 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993).) The Supplemental Gates Declaration fails to satisfy the requirements for admissible expert opinion testimony and must therefore be disregarded in its entirety.

The opinions set forth in the Supplemental Gates Declaration are inherently unreliable in that Ms. Gates did not base her opinions on sufficient facts or data and did not reasonably apply scientific principles to the facts and data. (Supplemental Declaration of Joseph Niland ("Supp. Niland Decl."), ¶ 4.) For several of her opinions, Ms. Gates does not cite to any supporting facts or data, and for her remaining opinions Ms. Gates only cites to selective data while ignoring the complete site investigation data and historical evidence. (*Id.*) It is not possible to reach the opinions Ms. Gates asserted in the Supplemental Gates Declaration without evaluating all the available site investigation data and other available evidence, such as the photographs, documents produced by the County of Sacramento, and the testimony of the former owners and operators of Arnold Cleaners and the contractors and Bel Air employees who participated in the Building demolition and subsequent paving of the former Building footprint. (*Id.*) Ms. Gates has no personal experience with the Site and apparently did not receive or chose not to consider all the

available evidence. (*Id.*) In addition, Ms. Gates mischaracterizes statements regarding the Site made by Joseph Niland at Geosyntec, a consultant with significant experience with this Site including evaluation of the remedial alternatives to clean up the contamination at this Site and preparation of the Remedial Action Plan for this Site. (*See id.*, ¶¶ 2, 4.) Thus, Ms. Gates' rebuttal opinions are not useful to the Court because they attempt to rebut opinions that were never advanced. (*Id.*, ¶ 4.) In support of several opinions, Ms. Gates speculates that facts might exist without citing to any evidence or data indicating that, at this particular Site, such facts are correct (*e.g.*, Supplemental Gates Declaration, ¶ 7.B.). (*Id.*) The opinions set forth in the Supplemental Gates Declaration are purely speculative and therefore are not reliable. (*Id.*)

Ms. Gates' opinions are also unreliable because, in addition to failing to consider the complete site investigation data and available evidence regarding the historical operations at the Site and the condition of the Building prior to demolition, Ms. Gates does not reliably apply scientific principles to the limited facts she does consider. (*Id.*, ¶ 5.) For example, Ms. Gates repeatedly opines that pavement outside of the former Building footprint was excavated based on her interpretation of an aerial photograph, and ignores the significant evidence to the contrary including the testimony of the general contractor who oversaw the demolition. (*Id.*; Declaration of Olivia M. Wright, ¶ 5, Exhibit D (Transcript of Deposition of Eric Thompson ("Thompson Depo."), 51:22-52:6 (Dkt. No. 222).) Ms. Gates also repeatedly opines that the soil underneath the former Arnold Cleaners suite was mixed or aerated during the Building demolition, and ignores the contrary sworn statement of the contractor who actually performed the aeration activities (Supp. Niland Decl., ¶ 5; *see* Declaration of Brian Robinson, ¶ 3-4 (Dkt. No. 221-4.) Ms. Gates also ignores Site conditions and history when evaluating sampling data, such as whether historic PCE use or storage occurred in the area where the sample was taken, whether there were any seams in the asphalt through which PCE could travel (*e.g.*, photographs show a seam between a concrete walkway and the asphalt parking lot behind the Arnold Cleaners building near SV-10), and subsurface conditions at the sample point that would impact the path and transport of PCE such as soil permeability. (Supp. Niland Decl., ¶ 5; Bel Air Mart's Objections to Evidence, 7:3-26 (Dkt. No. 221-1).) Therefore, despite Ms. Gates' consideration of

3

very limited data, her opinions set forth in the Supplemental Gates Declaration are nevertheless speculative and unreliable. (*Id.*)

Bel Air objects to Ms. Gates' opinions set forth in paragraphs 7.A., 7.B., and 7.C. of the Supplemental Gates Declaration on the ground that they consist of legal conclusions that are inadmissible under FRE 701 and 702. Ms. Gates' legal conclusions regarding the meaning of Eric Thompson's deposition testimony and whether Mr. Thompson's deposition testimony is more reliable than Brian Robinson's sworn statement will not "assist the trier of fact to understand the evidence or determine a fact in issue" and, accordingly, are improper and inadmissible under FRE 702. The trier of fact must determine the weight to accord admissible evidence. (*Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1059-1060 (9th Cir. 2008).)

Bel Air objects to the entirety of paragraph 5.A. of the Supplemental Gates Declaration on relevance grounds. Irrelevant evidence is inadmissible under FRE 402 and FRE 702 because such evidence is not useful to the trier of fact. Evidence is relevant only if it tends to make a fact of consequence in the litigation more or less probable. (FRE 401.) Ms. Gates does not explain how or why the general ways in which PCE can be released from a dry cleaner referenced in the Santa Clara Study relates to the relevance of a dry cleaner building generally, how the absence of the Building here impacts any party's ability to evaluate whether PCE was historically released through equipment failures, equipment operations, solvent transfers and storage, maintenance activities, waste discharges, or other spills, or how the absence of the Building impacts any party's ability to determine whether the PCE contamination at the Site resulted from surface spills (the surface of the ground under the former Arnold Cleaners suite was undisturbed and can be sampled if Century believes it is necessary). Accordingly, Ms. Gates' reference to the Santa Clara Study is irrelevant and is inadmissible.

Finally, to the extent Ms. Gates merely restates opinions in the Supplemental Gates Declaration that she asserted in her initial declaration, such opinions are inadmissible under FRE 401, 402, 701 and 702 for the reasons set forth in Bel Air Mart's Objections to Evidence Submitted by Century filed on November 21, 2013, Docket No. 221-1. Considering both the

4

opinions set forth in the initial Gates Declaration and the new opinions set forth in the Supplemental Gates Declaration, Ms. Gates has not established a reliable factual and scientific basis, based on the Site specific facts and data, that the absence of the Building prevents her from forming opinions on critical issues, such as when and how the releases occurred and the extent of the soil and groundwater contamination at the Site.  (*Id.*, ¶ 6.)

DATED: December 4, 2013        DOWNEY BRAND LLP

By: _____*/s/ Steven H. Goldberg*_____
    STEVEN H. GOLDBERG
    OLIVIA M. WRIGHT
    Attorneys for Plaintiff and Counterdefendant
    BEL AIR MART, a California corporation

DATED: December 4, 2013        LAW OFFICES OF JOHN C. LASSNER

By: _____*/s/ John C. Lassner*_____
    JOHN C. LASSNER
    Attorneys for Plaintiff and Counterdefendant
    WONG FAMILY INVESTORS, L.P.