1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    EASTERN DISTRICT OF CALIFORNIA
10
11   BEL AIR MART, et al.,                    No.  2:10-cv-02392-MCE-EFB
12              Plaintiffs,
13        v.                                  **MEMORANDUM AND ORDER**
14   ARNOLD CLEANERS, INC. et al.,
15              Defendants.
16
17        In September 2010, Plaintiffs Bel Air Mart ("Bel Air") and Wong Family Investors,

18   L.P. ("WFI") (collectively, "Plaintiffs"), filed this environmental cleanup action against

19   numerous Defendants.  Plaintiffs seek recovery for property damage and cleanup costs

20   caused by contamination from a dry cleaning facility ("the Facility") formerly operated on

21   the real property located at the southeast corner of Arden Way and Eastern Avenue in

22   Sacramento, California (the "Property").  Defendants in this case include parties who

23   allegedly owned and/or operated the Facility, or owned and/or operated the Property, for

24   various periods of time from an uncertain date before the 1970s through about 2007.

25   Plaintiffs' claims against the Defendants include claims for Cost Recovery pursuant to

26   section 107 of the Comprehensive Environmental Response, Compensation and Liability

27   Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of

28   1986 ("CERCLA"); contribution pursuant to California Health and Safety Code

                                          1

section 25300; Declaratory Relief pursuant to CERCLA section 113(g), 42 U.S.C. § 9613(g); Declaratory Relief pursuant to 28 U.S.C. § 2201; Equitable Indemnification; Declaratory Relief for Equitable Indemnification; Contribution under state common law; Negligence; Negligence Per Se; Private Nuisance pursuant to California Civil Code section 3479; Nuisance Per Se; Trespass; and Breach of Contract.  See First Amended Complaint, Dec. 9, 2010, ECF No. 7.  As discussed below, three motions by various Defendants are currently pending before this Court, ECF Nos. 205, 214 and 215.[1]

## BACKGROUND

On January 31, 2011, Defendant and counterclaimants R. Gern Nagler, as Trustee of the John W. Burns Testamentary Trust, and Robert Gern Nagler (collectively, "Nagler") filed a Counterclaim against Plaintiffs and the former owners/operators of the facility who are named defendants in the underlying action.  See ECF No. 38.  On February 2, 2011, Nagler filed a First Amended Counterclaim.  Nagler alleges claims for Negligence, Declaratory Relief, Equitable Indemnity and Contribution.  See ECF No. 41.

Nagler now seeks leave to file a Second Amended Counterclaim to include a breach of contract claim against Bel Air Mart and two statutory claims against the other parties for, in essence, indemnity/contribution.  Mot., Nov. 3, 2013, ECF No. 214.  By way of a separate Motion, Nagler also seeks leave to file an additional Third-Party Complaint against the Wong family members, individually and in their capacities as trustees for their respective trusts, for breach of guaranty and/or liability as general partners of WFI, under section 15643 of the California Corporations Code.  Mot., Nov. 3, 2013, ECF No. 215.

///

///

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local R. 230(g).  See Minute Order, Jan. 7, 2014, ECF No. 244.

1    On July 20, 2012, Defendant and Counter and Cross-Claimant Century Indemnity

2 Company ("Century Indemnity")[2] filed a Counter and Cross-Claim against Plaintiffs and

3 the former owners/operators of the Facility who are named defendants in the underlying

4 action, alleging claims for relief for Contribution, Declaratory Relief, Negligence,

5 Hazardous Substance Statutory Indemnity and Equitable Indemnity.  See ECF No. 149.

6    Century Indemnity now moves for sanctions against Bel Air on the basis of

7 spoliation of evidence.  Mot., Oct. 8, 2013, ECF No. 205.  Specifically, Century Indemnity

8 asks that the Court dismiss Plaintiff's entire action as a spoliation sanction, or, in the

9 alternative, for evidentiary and monetary sanctions.  See id.  Several of Century

10 Indemnity's co-Defendants joined its Motion. See ECF Nos. 208-213.

11    For the following reasons, Century Indemnity's Motion to dismiss, or, in the

12 alternative, for evidentiary and monetary sanctions, ECF No. 205, is denied without

13 prejudice.  Further, Nagler's motion for leave to file a Second Amended Counterclaim,

14 ECF No. 214, is granted in part and denied in part, and Nagler's motion for leave to file a

15 Third Party Complaint, ECF No. 215, is denied, all without prejudice.

16

17 **ANALYSIS**

18 **A.    Century Indemnity's Motion for Sanctions (ECF No. 205)**

19    In 2007, Bel Air retained environmental consultant Klenfelder, who conducted a

20 preliminary investigation which showed possible PCE and TECE contamination at the

21 Property.  In 2008, Bel Air nonetheless destroyed the Facility, purportedly in the normal

22 course of business, as part of a long planned expansion of its Arden Way facility.  In

23 2010, Plaintiffs brought this environmental cleanup action against the various owners

24 and operators of the Facility.[3]

25 _____

26 [2] Century Indemnity is successor to CCI Insurance Company, which in turn is successor to
Insurance Company of North America, the alleged insurer of The Estate of Ronald G. Armstrong,
Deceased, pursuant to California Probate Code section 550.

27 [3] With respect to Plaintiffs' first ex parte application, ECF No. 233, on December 12, 2013, on the
28 Court's own motion, the Court granted, in part, Plaintiff's request to file a Sur-Reply to Century Indemnity's
Reply re Motion for Sanctions (ECF No. 229).  ECF No. 241.  The Court also permitted a response to that

3

1   　　The crux of Defendants' argument for spoliation sanctions is that by destroying

2   the Facility, Bel Air destroyed the most critical evidence in this case with full knowledge

3   and acquiescence of its attorneys.  Defendants allege that Bel Air made no attempt to

4   preserve any evidence relating to the contamination and contend they will therefore have

5   difficulty proving what or where the source of the contamination was or whether Bel Air

6   or other parties are responsible for the cleanup and other resulting costs.  According to

7   Defendants, Bel Air's destruction of evidence has rendered meeting this burden

8   extremely difficult, if not impossible.  More specifically, Defendants contend that the only

9   way to conclusively determine the effect of the demolition on the spread of

10  contamination is to compare the soil and soil gas results before the demolition to the

11  results after the demolition.  As a result of the Facility's removal, this comparison is no

12  longer possible.

13  　　Defendants thus move for dismissal of this action as a spoliation sanction, or in

14  the alternative, for evidentiary sanctions and monetary sanctions.  Specifically,

15  Defendants argue that as of September 13, 2007, Bel Air had knowledge of potential

16  environmental problems related to the Facility, and had a duty to preserve evidence,

17  because: (1) its in-house and outside counsel were involved with the contamination

18  issues at the Property since the initial site investigation; (2) it specifically carved out

19  future environmental claims against one of the operators of Arnold Cleaners, Han Joo;

20  (3) discussions between Bel Air's counsel and its environmental consultant regarding

21  "pursuing the matter" had already taken place; (4) there was extensive correspondence

22  to and from both Bel Air's in-house and outside counsel related to the "legal

23  representation of Bel Air Mart" well before the demolition took place; and (5) Bel Air's

24  use of the attorney work product privilege for activities that took place before the

25  demolition evidences Bel Air's specific contemplation of this CERCLA action.

26  Sur-Reply by Defendants.  Id.  Thereafter, Plaintiffs and Century Indemnity filed supplemental briefing.
    See ECF Nos. 242, 243.  The Court did not permit any further filings by the parties prior to the scheduled
27  oral argument.  See ECF No. 241.  Because all of the parties were allowed to submit supplemental
    briefing, the Court declines to strike any portion of Century Indemnity's Reply (ECF No. 229).  Thus,
28  Plaintiffs' first ex parte application, ECF No. 233, is denied as moot.

1    In opposition, Bel Air asserts that, at the time of demolition in 2008, it did not know

2    of the extent and potential cost of the contamination and therefore did not view litigation

3    as likely.  Furthermore, Bel Air states that the notion that it knew or should have known

4    that litigation was imminent because it had knowledge of potential environmental

5    problems is "nonsense,"  and numerous environmental problems are resolved without

6    litigation such that the facts known to Bel Air at that time did not trigger a duty to

7    preserve the Facility.[4]

8    "Spoliation of evidence is the destruction or significant alteration of evidence, or

9    the failure to preserve property for another's use as evidence, in pending or future

10   litigation." Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 649 (9th Cir. 2009).  "The

11   duty to preserve material evidence arises not only during litigation but also extends to

12   that period before the litigation when a party reasonably should know that the evidence

13   may be relevant to anticipated litigation." World Courier v. Barone, C 06-3072 TEH,

14   2007 WL 1119196 (N.D. Cal. Apr. 16, 2007) (citing Kronisch v. United States, 150 F.3d

15   112, 126 (2d Cir. 1998)).  "This is an objective standard, asking not whether the party in

16   fact reasonably foresaw litigation, but whether a reasonable party in the same factual

17   circumstances would have reasonably foreseen litigation." Micron Tech., Inc. v. Rambus

18   Inc., 645 F.3d 1311, 1320 (Fed. Cir. 2011).

19   "Although the Ninth Circuit has not precisely defined when the duty to preserve is

20   triggered, trial courts in this Circuit generally agree that, '[a]s soon as a potential claim is

21   identified, a litigant is under a duty to preserve evidence which it knows or reasonably

22   should know is relevant to the action.'" Apple Inc. v. Samsung Electronics Co., Ltd.,

23   888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) (citing In re Napster, Inc. Copyright Litig.,

24

25   [4] Bel Air objects to Century Indemnity's evidence on several grounds.  Those objections, ECF No. 221-1, are overruled without prejudice because it was unnecessary for the Court to rely on that

26   evidence to resolve this dispute.  The Court similarly denies Century Indemnity's Motion to Strike Bel Air's opposition (ECF No. 231), which the Court considers timely under Local Rule 230.  The Court is also not

27   persuaded that Bel Air's admitted error in exceeding the page limits warrants striking the Opposition either, which Defendant does not indicate resulted in any prejudice.  Century Indemnity's Motion to Strike, ECF

28   No. 231, is thus denied.  However, all parties are admonished to scrupulously follow the terms of this Court's Scheduling Order going forward.

1  462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)); see AmeriPride Servs., Inc. v. Valley

2  Indus. Serv., Inc., S-00-113 LKK/JFM, 2006 WL 2308442, at *4 (E.D. Cal. Aug. 9, 2006)

3  (anticipated litigation date is when a potential claim is identified); see also Hynix

4  Semiconductor Inc. v. Rambus Inc., 645 F.3d 1336, 1346-47 (Fed. Cir. 2011) (litigation

5  need only be reasonably foreseeable, not immediate or certain).  The duty to preserve

6  evidence also attaches when "a party should have known that the evidence may be

7  relevant to future litigation."  In re Napster, Inc. Copyright Litig., 462 F.Supp.2d 1060,

8  1068 (N.D. Cal. 2006) (citing Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216

9  (S.D.N.Y. 2003)).  However, "[a] general concern over litigation does not trigger a duty to

10  preserve evidence."  Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc., 264 F.R.D.

11  517, 526 (N.D. Cal. 2009).

12
13
14
15

> When litigation is "reasonably foreseeable" is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.  This standard does not trigger the duty to preserve documents from the mere existence of a potential claim or the distant possibility of litigation.

16
17

> However, it is not so inflexible as to require that litigation be "imminent, or probable without significant contingencies."

18  Micron Tech., 645 F.3d at 1320.

19       "The moving party has the burden of demonstrating sanctionable conduct and

20  prejudice.  The weight of that burden depends on the [specific] circumstances."  Rev 973

21  LLC v. Mouren-Laurens, CV 98-10690 AHM (EX), 2009 WL 273205 at *1 (C.D. Cal.

22  Feb. 2, 2009).  To decide which specific spoliation sanction to impose, courts generally

23  consider three factors: "(1) the degree of fault of the party who altered or destroyed the

24  evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether

25  there is a lesser sanction that will avoid substantial unfairness to the opposing party."

26  Apple, Inc. v. Samsung Electronics Co., Ltd., 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012).

27  "While a district court has broad discretion in choosing an appropriate sanction for

28  spoliation, the applicable sanction should be molded to serve the prophylactic, punitive,

1   and remedial rationales underlying the spoliation doctrine." Silvestri v. Gen. Motors

2   Corp., 271 F.3d 583, 590 (4th Cir. 2001).  "In addition, a court must find some degree of

3   fault to impose sanctions. . . . But dismissal should be avoided if a lesser sanction will

4   perform the necessary function." Id.

5          "The exercise of a court's inherent powers must be applied with restraint and

6   discretion and only to the degree necessary to redress the abuse." Reinsdorf v.

7   Skechers U.S.A., Inc., 86 Fed. R. Serv. 3d 377 (C.D. Cal. 2013) (citing Chambers v.

8   NASCO, Inc., 501 U.S. 32, 45 (1991)).  Accordingly, the determination of an appropriate

9   sanction for spoliation is "confined to the sound discretion of the trial judge, and is

10  assessed on a case-by-case basis." Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423,

11  436 (2d Cir. 2001) (internal citations omitted).  "A party's destruction of evidence need

12  not be in 'bad faith' to warrant a court's imposition of sanctions." Rev 973 LLC v.

13  Mouren-Laurens, CV 98-10690 AHM (EX), 2009 WL 273205 at *1 (C.D. Cal. Feb. 2,

14  2009).

15         "Dismissal under a court's inherent powers is justified in extreme circumstances.

16  In the Ninth Circuit, extraordinary circumstances exist where there is a pattern of

17  disregard for Court orders and deceptive litigation tactics that threaten to interfere with

18  the rightful decision of a case." In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d

19  1060, 1071 (N.D. Cal. 2006) (internal citations omitted).

20              Dismissal is an available sanction when a party has engaged
            deliberately in deceptive practices that undermine the
21          integrity of judicial proceedings because courts have inherent
            power to dismiss an action when a party has willfully
22          deceived the court and engaged in conduct utterly
            inconsistent with the orderly administration of justice.  Before
23          imposing the 'harsh sanction' of dismissal, however, the
            district court should consider the following factors: (1) the
24          public's interest in expeditious resolution of litigation; (2) the
            court's need to manage its dockets; (3) the risk of prejudice to
25          the party seeking sanctions; (4) the public policy favoring
            disposition of cases on their merits; and (5) the availability of
26          less drastic sanctions.

27  ///

28  ///

7

1   Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006). "While the district court need

2   not make explicit findings regarding each of these factors, a finding of 'willfulness, fault,

3   or bad faith' is required for dismissal to be proper. Additionally, the district court must

4   consider 'less severe alternatives' than outright dismissal." Id. (internal citations

5   omitted).

6        As noted above, Defendants point to five events which they claim circumstantially

7   demonstrate that Bel Air spoliated evidence, some of which are more compelling than

8   others. Bel Air strongly contests each of these contentions. However, even if all of

9   Defendants' contentions are true, their accusations do not rise to the level of a "pattern

10  of deception and discovery abuse" that would make "it impossible for the district court to

11  conduct a trial with any reasonable assurance that the truth would be available." Valley

12  Engineers Inc., 158 F.3d at 1057. Defendants present no evidence that Bel Air "willfully

13  deceived the court and engaged in conduct utterly inconsistent with the orderly

14  administration of justice." Id. Public policy favors disposition of cases on their merits,

15  and even if the rest of Defendant's allegations are true, it will nonetheless be possible for

16  this Court to conduct a fair and adequate trial. This is particularly true given the variety

17  of less drastic sanctions at the Court's disposal which can be narrowly tailored to

18  address any potential prejudice suffered by Defendants. See Advantacare Health

19  Partners, LP v. Access IV, No. C 03-04496 JF, 2004 WL 1837997 at *5 (N.D. Cal.

20  Aug.17, 2004) (citing Halaco Eng'g Co. v. Costle, 843 F.2d 376, 381 (9th Cir. 1988))

21  (noting that dismissal is appropriate in extraordinary circumstances such as where there

22  is a pattern of disregard for Court orders and deceptive litigation tactics that threaten to

23  interfere with the rightful decision of a case). Therefore, the Court denies without

24  prejudice Century Indemnity's motion for dismissal.

25        Nor will the Court impose any other sanctions at this time. Defendant's Motion

26  requires this Court to make, at least in part, a credibility determination. However, as set

27  forth in Century Indemnification's motion, supporting evidence, and subsequent reply

28  and supplemental briefing, it is not clear that Bel Air knew or reasonably should have

1   known that the destroyed evidence might be relevant to future litigation at the time it

2   removed the building in question.

3          That being said, the Court cannot predict how a reasonable jury might resolve the

4   spoliation question.  Therefore, the Court does not reach the issue of whether spoliation

5   occurred in this matter.  See Kronisch v. United States, 150 F.3d 112, 127 (2d Cir. 1998)

6   (noting that where a district court could not rule out the possibility that a reasonable jury

7   would find that spoliation occurred, the veracity of a party's reasons for destroying the

8   evidence "is an issue of credibility best left for trial") (quoting the district court in that

9   matter).  Cf. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1322

10  (11th Cir. 2011) (Korman, J., dissenting) (noting that "[a] factual finding of spoliation is

11  necessary only where the district judge seeks to impose a particular sanction beyond

12  submitting the issue to the jury").  Instead, it will be up to the jury to determine whether

13  Bel Air had an obligation to preserve evidence and, if the jury makes such a finding, it

14  will then be entitled to draw an adverse inference against that party.  Kronisch, 150 F.3d

15  at 130.

16         Accordingly, Century Indemnity may renew the issue of spoliation in a pre-trial

17  motion and present the issue to the jury for adjudication.  See, e.g., Glover v. BIC Corp.,

18  6 F.3d 1318, 1332 (9th Cir. 1993) (noting that the district court properly submitted all the

19  evidence to the jury concerning the alleged spoliation of evidence).  Cf. Josendis,

20  662 F.3d at 1322 (Korman, J., dissenting) (observing that where there is sufficient

21  probative evidence for a jury to find an act of spoliation, a court may deny a motion for

22  summary judgment and the issue should therefore reach the jury).[5]

23

24          [5] Moreover, even if the Court were to find that Bel Air engaged in spoliation when it destroyed the
     Facility, spoliation sanctions must be narrowly tailored to remedy the prejudice to Defendants.  Because
25  discovery has not closed, the Court would be unable to determine the extent of any potential prejudice
     created by Bel Air's alleged failure to preserve evidence.  See Phillip M. Adams & Assocs., L.L.C. v. Dell,
26  Inc., 621 F. Supp. 2d 1173, 1195 (D. Utah 2009) (noting that "[p]rejudice by loss of evidence must be
     measured in light of other evidence available. . . . Therefore the degree of prejudice and the appropriate
27  sanction cannot be determined until the close of discovery"); In re Napster, Inc. Copyright Litig.,
     462 F. Supp. 2d 1060, 1077 (N.D. Cal. 2006) (noting that "[a]t this stage of the proceedings, when the full
28  evidentiary record has not yet been considered by the court, . . . the court cannot determine the extent of
     prejudice created" by a party's failure to preserve evidence).

1   Based on the record before it, the Court denies Century Indemnity's Motion for

2   spoliation sanctions, ECF No. 205, without prejudice.

3

4   **B.   Nagler's Motion for Leave to File an Amended Counterclaim**

5   Nagler had an ownership interest in the real Property that is the subject of this

6   litigation from December 1980 to April 1988.  In October 1984, Nagler and Bel Air

7   entered into a written lease for the property.  Plaintiffs named Nagler as a one of the

8   Defendants in its action for damages and cleanup costs resulting from the

9   contamination.  Nagler subsequently filed counterclaims on January 31, 2011, against

10  several parties, including Plaintiffs, asserting causes of action for: (1) Negligence,

11  (2) Declaratory Relief, (3) Equitable Indemnity, and (4) Contribution.  See ECF 38.

12  Nagler filed a First Amended Counter Claim on February 2, 2011, that contained the

13  same four claims.  See ECF No. 41.  On November 4, 2013, Nagler filed a motion for

14  leave to file a Second Amended Counterclaim.  See ECF No. 214.

15  The amended counterclaim seeks to add additional theories of recovery under

16  (1) breach of contract, (2) contribution pursuant to CERCLA § 113(f), and (3) Hazardous

17  Substance Statutory Indemnity.  See ECF 214-4.  Nagler contends that that the breach

18  of contract claim arises from its allegation that Bel Air breached the parties' lease by

19  letting the property to a polluter—a  fact Nagler contends he was unaware of until

20  Plaintiffs filed the Complaint.[6]

21  ///

22  ///

23  ///

24  ///

25  ///

26  _____

27  [6] In opposing Nagler's two motions, Plaintiffs requested that this Court take judicial notice of an "Individual Gift Deed" recorded by the Sacramento County Clerk-Recorder on October 20, 1982.  See ECF

28  Nos. 218, 220.  The Court did not consider that document and thus Plaintiffs' requests for judicial notice, ECF Nos. 218, 220, are denied as moot.

1    This case was stayed on multiple occasions, notably from October 6, 2011, to

2  January 31, 2012, from June 4, 2012 to October 31, 2012, and from June 5, 2013, until

3  October 31, 2013.  See, e.g., ECF No. 198.  Nagler filed his motion on November 4,

4  2013, shortly after the third stay was lifted.  Discovery in this case is ongoing and does

5  not close until July 25, 2014.  See PTSO, ECF No. 202.[7]

6                    **1.    Amendment under Rule 16(b)**

7    Generally, the Court is required to enter a pretrial scheduling order within 120

8  days of the filing of the complaint.  Fed. R. Civ. P. 16(b).  The scheduling order "controls

9  the subsequent course of the action" unless modified by the Court.  Fed. R. Civ. P.

10  16(e).  Orders entered before the final pretrial conference may be modified upon a

11  showing of "good cause," Fed. R. Civ. P. 16(b), but orders "following a final pretrial

12  conference shall be modified only to prevent manifest injustice."  Fed. R. Civ. P. 16(e);

13  see also Johnson v. Mammoth Recreations, 975 F.2d 604, 608 (9th Cir. 1992).

14    Rule 16(b)'s "good cause" standard primarily considers the diligence of the party

15  seeking the amendment.  Johnson, 975 F.2d at 609.  The district court may modify the

16  pretrial schedule "if it cannot reasonably be met despite the diligence of the party

17  seeking the extension."  Fed. R. Civ. P. 16 advisory committee's notes (1983

18  amendment); id.  Moreover, carelessness is not compatible with a finding of diligence

19  and offers no reason for a grant of relief.  Johnson, 975 F.2d at 609.  Although the

20  existence or degree of prejudice to the party opposing the modification might supply

21  additional reasons to deny a motion, the focus of the inquiry is upon the moving party's

22  reasons for seeking modification.

23  ///

24    [7] Plaintiffs objected to Nagler's Reply, ECF No. 227, on the grounds that he included new

25  arguments and new evidence that was not included in his Motion (ECF Nos. 214).  See ECF Nos. 234.
Plaintiffs asked that the Court strike the new arguments and evidence, or in the alternative, grant leave for

26  Plaintiffs to file a Sur-Reply.  Id.  On December 12, 2013, on the Court's own motion, the Court denied
Plaintiff's request to file a Sur-Reply.  See Minute Order, ECF No. 241.  The Court declines to strike any

27  portion of Nagler's Reply Brief.  Because the Court does not consider the contested new argument in
Nagler's Reply brief (ECF Nos. 227) and the accompanying contested evidence in this Order, the Court

28  declines to address the merits of Plaintiffs' motions to strike.  Thus, Plaintiffs' second ex parte application,
ECF No. 234, is denied as moot.

1  Id. (citing Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Me. 1985)).  If

2  the moving party was not diligent, the Court's inquiry should end.  Id.

3          This Court's July 25, 2013 Amended Pretrial Scheduling Order requires that a

4  party seek leave of the Court to amend its pleadings and that good cause be shown

5  before amendments to pleadings are permitted.  See ECF No. 202.  Therefore, Nagler

6  must meet the Rule 16 standard of good cause and the Rule 15 standard for

7  amendment of pleadings.

8          The focus of the Court's Rule 16 inquiry is the moving party's reasons for seeking

9  modification.  Here, Nagler purports to have delayed in bringing his motion because of

10  the three stays halting the proceedings in this case, delays from mediation proceedings

11  in this case held in October 2012 and October 2013 and the facts required for his

12  amendments came through discovery.  Plaintiffs object on the grounds that Nagler has

13  been aware of the facts and theories supporting amendment since the inception of the

14  action.  Plaintiffs also contend that the issue of the stay is a red herring because Nagler

15  could have amended his Complaint before and in between the stays.

16          In light of the unique circumstances of this case, specifically the three stays

17  imposed by this Court and the fact that Nagler brought his amended motion to amend

18  days after the third stay was lifted on October 31, 2013, the Court finds that Nagler acted

19  with reasonable diligence in amending his existing Counterclaims for the purposes of

20  Rule 16 and the general strictures of Rule 15 thus apply.

21              **2.      Amendment under Rule 15**

22          The court should freely give leave when justice so requires.  Fed. R. Civ. P.

23  15(a)(2). Generally, the five factors of bad faith, undue delay, prejudice to opposing

24  party, futility of amendment and whether plaintiff has previously amended complaint are

25  considered when assessing the propriety of a motion to amend.  Ahlmeyer v. Nevada

26  Sys. of Higher Educ., 555 F.3d 1051, 1055 (9th Cir. 2009).  Here, Plaintiffs argue that:

27  (1) Nagler unduly delayed in seeking leave to amend, (2) Nagler's proposed

28  counterclaim for breach of contract would be futile, and (3) Nagler's proposed

1   amendment to add the additional indemnity and contribution claims at this late date

2   would prejudice Plaintiffs.

3          Plaintiffs contend that Nagler delayed in bringing his Motion despite the fact that

4   he knew or should have known of the facts supporting his claim at the very latest when

5   he first appeared in the action.  In addition, Plaintiffs assert that Nagler should have

6   sought to amend his counterclaim in the eight months before enactment of the first stay

7   or between the various stays.  In his Reply, Nagler admits that "[he] may have known

8   about the facts required for an amended [C]omplaint."  ECF No. 227 at 8.  Because

9   Plaintiff admits that he may have known about the relevant facts, this factor weighs

10  against allowing Nagler to amend his Counterclaims.  See AmerisourceBergen Corp. v.

11  Dialysist W., Inc., 465 F.3d 946, 953 (9th Cir. 2006).

12         Next, Plaintiffs contend that leave to amend should be denied because Nagler's

13  proposed counterclaim for breach of contract would be futile because the statute of

14  limitations for contract claims is four years.  ECF No. 219 at 11.  In addition, Plaintiffs

15  assert that the statute of limitations began to run on the alleged breach for allowing a dry

16  cleaner to operate at the leased remises when the breach first occurred.  Id.  Both

17  parties agree that the statute of limitations for a breach of written contract is four years.

18  See Cal. Code Civ. Proc. § 337.

19         Nagler argues that the breach of Contract claim is not premised on Plaintiffs

20  merely allowing a dry cleaner to operate on the premises, but is instead predicated on

21  the fact that PCE, HVOC, or VOC were released at the site.  Nagler therefore contends

22  that the breach was not the mere letting of the property, but the letting of the property to

23  an alleged polluter.  Thus, Nagler asserts that because he was not aware of the

24  contamination until the filing of Plaintiffs' Complaint, the four-year statute of limitations

25  has not run.  See ECF No. 227 at 9.  As for Nagler's claim that Plaintiffs breached the

26  contract for failing to insure Nagler, Nagler similarly argues that no breach was known or

27  discoverable until Nagler was sued.  Id.

28  ///

1    Although Nagler cites no authority to support his claim that the statute of

2    limitations did not accrue until Plaintiffs' Complaint was filed, it appears that Nagler may

3    be relying on California's "Discovery Rule."  See April Enterprises, Inc. v. KTTV, 147 Cal.

4    App. 3d 805, 826-27 (1983) (explaining that "a cause of action under the discovery rule

5    accrues when the plaintiff discovers or should have discovered all facts essential to his

6    cause of action . . . this has been interpreted under the discovery rule to be when plaintiff

7    either (1) actually discovered his injury and its negligent cause or (2) could have

8    discovered injury and cause through the exercise of reasonable diligence"); see also

9    William L. Lyon & Assocs., Inc. v. Superior Court, 204 Cal. App. 4th 1294, 1310 (2012),

10   as modified on denial of reh'g (May 11, 2012), review denied (July 25, 2012) (applying

11   the discovery rule to a breach of contract claim).

12         "The discovery rule itself contains procedural safeguards protecting against

13   lengthy litigation on the issue of accrual.  It presumes that a plaintiff has knowledge of

14   injury on the date of injury.  In order to rebut the presumption, a plaintiff must plead facts

15   sufficient to convince the trial judge that delayed discovery was justified.  And when the

16   case is tried on the merits the plaintiff bears the burden of proof on the discovery issue."

17   William L. Lyon & Assocs., Inc., 204 Cal. App. 4th at 1310 (emphasis added).  Here,

18   Nagler's proposed breach of contract claim does not plead facts sufficient to convince

19   the Court that delayed discovery was justified.  In fact, Nagler's proposed fifth cause of

20   action for Breach of Contract, ECF No. 214-4 at 11, contains no facts relating to

21   discovery of the breach of contract claim.

22         "[F]utility is analyzed under the same standard of legal sufficiency as a motion to

23   dismiss under Fed. R. Civ. P. 12(b)(6)."  SmithKline Beecham Corp. v. Geneva Pharm.,

24   Inc., 287 F. Supp. 2d 576, 581 (E.D. Pa. 2002).  Thus, "[f]actual allegations must be

25   enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly,

26   550 U.S. 544, 555 (2007) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal

27   Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain

28   something more than "a statement of facts that merely creates a suspicion [of] a legally

14

1   cognizable right of action.")).  Under the pleading standards of Rule 12(b)(6), Nagler's

2   breach of contract claim fails because it does not state a claim upon which relief can be

3   granted.

4        Nagler's motion for leave to amend with respect to his contract claim is thus

5   denied without prejudice.  Nagler is granted one final opportunity to seek leave to amend

6   the Counterclaim in order to state a legally cognizable cause of action for breach of

7   contract.  He may (but is not required to) renew his Motion not later than twenty (20)

8   days following the date this Order is electronically filed.  If Nagler does not timely renew

9   his Motion, no further leave to amend this Counterclaim will be permitted.

10                    **3.    Prejudice Suffered by Amendment to Add Indemnity and
                              Contribution Claims**

11

12       Finally, Plaintiffs contend that because Nagler already asserted indemnity and

13  contribution counterclaims under state law, his HSAA indemnity and contribution under

14  CERCLA claims cause unnecessary complication and delay.  See ECF No 219 at 13.

15  Nagler responds that his proposed new claims for HSAA indemnity and contribution

16  under CERCLA do not prejudice Plaintiffs because co-Defendants Century Indemnity

17  and Arrowood Indemnity have already pled these same claims in this action.  See ECF

18  No. 227 at 10.

19       In their Opposition, Plaintiffs admit that Nagler has "already asserted indemnity

20  and contribution counterclaims under state law."  ECF No. 219 at 13.  Therefore, it

21  appears that the amendment will not involve a great deal of additional discovery.

22  Because discovery relating to these similar state claims is ongoing, Plaintiffs are not

23  prejudiced by the inclusion of these federal claims.  Cf. Bleiler v. Cristwood Contracting

24  Co., Inc., 868 F. Supp. 461, 463 (D. Conn. 1994) aff'd in part, rev'd in part on different

25  grounds sub nom. Bleiler v. Cristwood Const., Inc., 72 F.3d 13 (2d Cir. 1995)

26  ("Permitting a proposed amendment also may be prejudicial if discovery already has

27  been completed, but this concern may be alleviated if the new claim arises from a similar

28  set of operative facts and a similar time as the existing claims."); Citizens & S. Sec.

1   Corp. v. Braten, 733 F. Supp. 655, 660 (S.D.N.Y. 1990) ("Prejudice has been found

2   when proposed amendment contained an unexpected allegation or defense.  Prejudice

3   may also occur when the proposed amended pleading is interposed after the completion

4   of discovery, or is based upon a new set of operative facts.") (internal citations omitted).

5       Thus, the Court grants Nagler leave to amend his Counterclaim with new claims

6   for HSAA indemnity and Contribution under CERCLA, but denies without prejudice his

7   Counterclaim with a breach of contract claim.

8       **C.    Nagler's Motion for Leave to File a Third Party Claim**

9       Nagler also seeks leave of this Court to file a third party complaint against eight

10  individuals, the "Wong Individuals," in their capacity as the general partners of Plaintiff

11  WFI.  Nagler seeks to assert six claims that he included in his proposed second

12  amended counterclaim against Plaintiffs:  negligence, declaratory relief, equitable

13  indemnity, contribution, hazardous substance statutory indemnity and contribution

14  pursuant to CERCLA, as well as a new claim for breach of guaranty.[8]

15      As outlined above, this Court's July 25, 2013, Amended Pretrial Scheduling Order

16  requires a party seek leave of Court and that good cause be shown before amendments

17  to pleadings are permitted.  See ECF No. 202.  Therefore, Nagler must meet the Rule 16

18  standard of good cause and the Rule 14(a) standard for impleader.

19      Unlike with his above claims, the Court concludes that Nagler was not diligent in

20  bringing his current complaint against these new individuals.  While Nagler claims that

21  he was unaware of the facts necessary for these claims, in 2011 Nagler brought several

22  of the same claims based on the same facts against Plaintiffs.  Thus, Nagler was not

23  reasonably diligent in delaying for two years in naming eight new parties to the matter.

24      [8] Plaintiffs also objected to Nagler's Reply, ECF No. 228, on the grounds that he included new
    arguments and new evidence that was not included in his Motion (ECF Nos. 215).  See ECF Nos. 235.
25  Plaintiffs asked that the Court strike the new arguments and evidence, or in the alternative, grant leave for
    Plaintiffs to file a Sur-Reply.  Id.  On December 12, 2013, on the Court's own motion, the Court denied
26  Plaintiff's request to file a Sur-Reply.  See Minute Order, ECF No. 241.  The Court declines to strike any
    portion of Nagler's Reply Brief.  Because the Court does not consider the contested new argument in
27  Nagler's Reply brief (ECF Nos. 228) and the accompanying contested evidence in this Order, the Court
    declines to address the merits of Plaintiffs' motions to strike.  Thus, Plaintiffs' third ex parte application,
28  ECF Nos. 235, is denied as moot.

1   Nagler could have, at the very least, brought the negligence, declaratory relief, equitable

2   indemnity and contribution claims against these eight third-party defendants when he

3   brought his initial and amended Counterclaims, yet he neglected to do so and fails to

4   adequately explain why he could not do so.  "Late amendments to assert new theories

5   are not reviewed favorably when the facts and the theory have been known to the party

6   seeking amendment since the inception of the cause of action."  Royal Ins. Co. of Am. v.

7   Sw. Marine, 194 F.3d 1009, 1016-17 (9th Cir. 1999) (internal citations omitted); see In re

8   W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 737 (9th Cir. 2013)

9   (upholding a district court's finding that a party was not diligent in seeking to amend their

10  complaint because "[t]he good cause standard typically will not be met where the party

11  seeking to modify the scheduling order has been aware of the facts and theories

12  supporting amendment since the inception of the action") (emphasis added).  The Court

13  therefore denies Nagler's motion for leave to file a third-party claim, ECF No. 215.

14          Moreover, even if Nagler had established good cause to modify the pretrial

15  scheduling order for leave to file a third-party claim, Nagler's Motion would still fail,

16  because he has not shown that his amendment meets the requirements of Rule 14.

17  Rule 14 permits parties to bring a lawsuit against, or "implead," a third party who is not

18  already a party to the lawsuit in order to transfer liability being asserted against it in the

19  underlying lawsuit.  Specifically, Rule 14 provides that "at any time after commencement

20  of the action, a defending party, as a third-party plaintiff, may cause a summons and

21  complaint to be served upon a person not a party to the action who is or may be liable to

22  the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff."

23  Fed. R. Civ. P. 14(a).  Rule 14 is to be construed liberally in favor of allowing impleader.

24  Lehman v. Revolution Portfolio L.L.C., 166 F.3d 389, 393 (1st Cir. 1999).  However, the

25  District Court has broad discretion in determining the propriety of a third-party claim

26  under Rule 14.  See Sw. Admin., Inc. v. Rozay's Transfer, 791 F.2d 769, 777 (9th Cir.

27  1986).  The Court is to consider all relevant factors of each individual case including

28  whether the delay in seeking leave was excusable and whether the delay would

1  prejudice a party.  In addition, the Court does not abuse its discretion by denying an

2  application that will disadvantage an existing action.  Id.

3       Here, Nagler's third-party complaint would unnecessarily complicate and delay

4  discovery in this matter.  Plaintiffs contend that "Nagler's proposed third-party complaint

5  expands the issues in the current litigation by, among other things, raising partnership

6  issues, potentially complicated breach of contract and guaranty issues, and issues

7  relating to the viability of claims against additional deceased individuals, all of which are

8  not currently part of the litigation."  ECF No. 217 at 10.  Plaintiffs concerns are well

9  taken.

10      "If bringing in the third party will introduce unrelated issues and unduly complicate

11  the original suit, impleader may be denied.  Moreover, a lack of similarity between the

12  issues and evidence required to prove the main and third-party claims may be sufficient

13  to warrant the dismissal of an impleaded party." Dishong v. Peabody Corp., 219 F.R.D.

14  382, 385 (E.D. Va. 2003) (internal citations omitted); see United States Fid. & Guar. Co.

15  v. Perkins, 388 F.2d 771, 773 (10th Cir.1968) ("If impleading a third party defendant

16  would require the trial of issues not involved in the controversy between the original

17  parties without serving any convenience, there is no good reason to permit the third-

18  party complaint to be filed.").  Although most of Nagler's claims against the third-party

19  defendants, the general partners of Plaintiff WFI, are similar to those alleged against

20  Plaintiffs in Nagler's amended Counterclaim, Nagler's third-party complaint raises

21  several new issues and adds eight new individual parties to this matter.  Nagler now

22  asserts that the Third Party Defendants are liable as either general partners or as

23  guarantors.  By raising new partnership issues, guaranty issues and claims against

24  deceased individuals, Nagler seeks to broaden this litigation and unnecessarily

25  complicate the trial and discovery.  Unlike Nagler's motion for leave to amend his

26  existing Counterclaims—where discovery has been ongoing on the same and

27  substantially similar issues with the existing parties—Nagler here seeks to bring in new

28  parties and new issues.  Further, no discovery has been conducted on these new issues

18

1 | with respect to these new parties.  Although Rule 14 is to be construed liberally in favor

2 | of allowing impleader, Nagler fails to satisfy this standard.  See Sw. Admin., Inc.,

3 | 791 F.2d at 777.

4 |       Thus, the Court denies Nagler's Motion for Leave to File a Third-Party Claim (ECF

5 | No. 215) without prejudice.   Again, Nagler will be permitted twenty (20) days from the

6 | date this Order is electronically filed in which to renew his Motion.  Should he fail to do

7 | so, no further leave to add these parties will be permitted.

8 |

9 |                                **CONCLUSION**

10 |

11 |       For the reasons set forth above, IT IS HEREBY ORDERED THAT:

12 |   1.    Century Indemnity's Motion for Sanctions, ECF No. 205, is DENIED in its

13 |         entirety without prejudice.

14 |   2.    Nagler's Motion for Leave to File a Second Amended Counterclaim, ECF

15 |         No. 214, is GRANTED in part and DENIED in part without prejudice as

16 |         explained in this Order.

17 |   3.    Nagler's Motion for Leave to File Third-Party Complaint, ECF No. 215, is

18 |         DENIED without prejudice.

19 |   4.    Century Indemnity's Motion to Strike Plaintiff Bel Air Mart's Opposition,

20 |         ECF No. 231, is DENIED.

21 |       IT IS SO ORDERED.

22 | Dated:  February 21, 2014

23 |

24 |

25 | _____

26 | MORRISON C. ENGLAND, JR. CHIEF JUDGE
     UNITED STATES DISTRICT COURT

27 |

28 |